[Cite as *State v. Lipford*, 2014-Ohio-5730.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2014CA00004 |
| JARED LIPFORD | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:       Appeal from the Stark County Common
                               Pleas Court, Case No. 2013CR1337(A)


JUDGMENT:                      Affirmed


DATE OF JUDGMENT ENTRY:        December 22, 2014


APPEARANCES:


For Plaintiff-Appellee               For Defendant-Appellant


JOHN D. FERRERO,                     EARLE E. WISE, JR.
Prosecuting Attorney,                122 Central Plaza, North
Stark County, Ohio                   Canton, Ohio 44702

By: Renee M. Watson
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, South - Suite 510
Canton, Ohio 44702-1413

*Hoffman, P.J.*

{¶1}    Defendant-appellant Jared Lipford appeals his conviction entered by the Stark County Court of Common Pleas on one count of illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041(A) and one count of tampering with evidence, in violation R.C. 2921.12(A)(1).  Plaintiff-appellee is the state of Ohio.

### STATEMENT OF THE FACTS AND CASE

{¶2}    In April of 2013, Appellant moved into a residence at 1422 Shriver Avenue Northeast, Canton, Ohio.  The night he moved in, Appellant brought with him a blue Rubbermaid container.  Matthew Pallaye, Ashley Stegeman, Alexandria Murphy, and Murphy's minor son D.G. also lived at the house.

{¶3}    On May 1, 2013, Canton Police Department officers were dispatched to the residence for a child welfare check based upon suspicion of a methamphetamine lab. An active lab was located in the attic of the home.  Upon entering the attic, Officers found a blue plastic Rubbermaid bin.  The officers also found 20 2-liter bottles, several 20-ounce bottles, empty Sudafed boxes, coffee filters, cold packs, Coleman fuel, crystal drain opener, lithium batteries and drug paraphernalia.

{¶4}    Appellant was later charged with illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041(A), and tampering with evidence in violation of R.C. 2921.12(A)(1).  Pallaye and Murphy were charged with one count of illegal assembly or possession of chemicals for the manufacture of drugs. Murphy was also charged with one count of child endangering.

{¶5} Pallaye and Murphy entered into a plea agreement in exchange for their testimony against Appellant.

{¶6} Prior to trial, Appellant moved the trial court to exclude evidence relative to his use and sale of heroin and methamphetamines. The State in turn argued such evidence should be allowed as Appellant traded both meth and heroin for the chemicals needed to operate the methamphetamine lab. The trial court overruled the motion in limine, but reserved a ruling should Appellant renew the motion at trial, if the testimony became purely prejudicial.

{¶7} Following a jury trial, Appellant was convicted of the charges. The trial court conducted a sentencing hearing, sentencing Appellant to seven years for illegal assembly or possession of chemicals for the manufacture of drugs, and three years on the tampering with evidence charge to run concurrent to the term imposed on the illegal assembly of possession charge.

{¶8} Appellant appeals, assigning as error,

{¶9} "I. THE TRIAL COURT ERRED WHEN IT ALLOWED VARIOUS WITNESSES TO TESTIFY TO IMPROPER CHARACTER EVIDENCE AND/OR OTHER CRIMES, WRONGS OR ACTS EVIDENCE, IN VIOLATION OF EVIDENCE RULE 404 RESULTING IN THE PRESENTATION OF EVIDNCE [SIC] WHICH WAS UNFAIRLY PREJUDICIAL TO THE DEFENDANT DENYING HIM A FAIR TRIAL.

{¶10} "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FAILDED [SIC] TO GIVE THE JURY A LIMITING INSTRUCTION RELATED TO THE OTHER ACTS EVIDENCE PRESENTED TO THE JURY AT TRIAL.

**{¶11}** "III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION TO THE PREJUDICE OF THE DEFENDANT BY ALLOWING IMPROPER TESTIMONY BY SEVERAL WITNESSES INCLUDING STATEMENTS SUPPORTED BY NO PERSONAL KNOWLEDGE AND HEARSAY STATEMENTS, IN VIOLATION OF EVIDENCE RULES 602 AND 802.

**{¶12}** "IV. THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUSTAIN THE CONVICTIONS AND THE VERDICTS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIENCE [SIC].

**{¶13}** "V. DEFENANT'S [SIC] TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF DEFENDANT'S RIGHTS TO A FAIR TRIAL UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I, OF THE OHIO CONSTITUTION.

**{¶14}** "VI. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION TO THE PREJUDICE OF THE DEFENDANT BY FAILING TO PREVENT CUMMULATIVE [SIC] ERROR, WHICH PREVENTED DEFENDANT FROM RECEIVING A FAIR TRIAL.

I.

**{¶15}** In the first assignment of error, Appellant maintains the trial court erred in allowing character evidence of other crimes or acts in violation of Evidence Rule 404.

**{¶16}** Evidence Rule 404 reads,

(B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be

admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial, if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Evid. R. Rule 404

**{¶17}** Appellant argues the trial court improperly allowed testimony relative to Appellant's use, sale or purchase of heroin; the sale or trade of methamphetamine; conduct leading to Appellant being chased by a person with a gun; and witness statements Appellant had cooked meth in the past.

**{¶18}** We find the trial court did not err in finding some of the other acts evidence was admissible to prove Appellant's intent to manufacture methamphetamine as intent to manufacture is a specific element of the charged offense. Here, Appellant sold or bartered meth to others, trading drugs for the chemicals needed to make additional methamphetamine. Neither Appellant, nor his co-defendants, had a job or means of income to purchase the materials needed to make the meth. Appellant used some of the proceeds of selling meth or bartered meth to obtain heroin. Furthermore, evidence introduced at trial established Appellant cooked or sold meth in the past and bartered the finished product for chemicals to produce more meth, which demonstrated his intent to manufacture methamphetamine with the chemicals.

**{¶19}** At trial Stegeman testified she gave Appellant a ride, believing he was going to his dad's house. She testified,

Q. So what happens - - now, you mentioned a couple times about the police coming to your house. What happens the day the police come to your house?

A. Jared asked us for a ride to his dad's house to go get some of his clothes or something from his dad's house. And when I told him I didn't know how to get there and he was giving me directions - - when he was giving me the directions, it became clear to me that we weren't going to his dad's house. He took me to a location that I knew that they were buying heroin from, and I freaked out. I told him this is not happening. And he told me just, you know, pull over the car and he got out.

And then when he got back in the car after going into what I found out was the heroin dealer's house, he said something to somebody on the street as he was getting in the car, and that person chased us and they had a gun - -

MS. BIBLE: I'm going to object at this point.

THE WITNESS: - - and everything.

THE COURT: Overruled.

BY MS. SCHNELLINGER:

Q. Did you drive away?

A. Yes. I drove back towards the house, and then when I realized this guy was still following us, I kind of took a back alley towards the direction of the house, told Jared and Matt to both get out of my car, I had to get to work. And I just told them get out, I'm going to work. Jared - -

and I told Matt right before I left, Jared and Alex need to be gone by the time I get home or I'm done.

Tr. At 135-137.

**{¶20}** We find admission of this evidence was error. However, we find the error was harmless as there was overwhelming evidence as to Appellant's guilt in this matter.

**{¶21}** Additionally, Appellant argues the trial court erred in admitting statements made by Mr. Pallaye concerning information he had learned from the Carrollton Police Department relative to Appellant selling meth in the past.

**{¶22}** At trial, Mr. Pallaye testified,

Q. Okay. Let's talk about that. How did that start? How did the meth use start?

A. I originally found out that Jared sold meth through Carrollton Police Department. I was working for them and worked for the New Philly Police Department, and that's why I started talking to him was to nark him, and so just being nice to him, you know, trying to get him on my good side so I could do what I wanted to do, I had him come up.

Tr. At 202-203.

**{¶23}** At trial, Mr. Pallaye claimed to be a confidential informant for the Carrollton Police Department. Appellant then moved for a mistrial, as this information had not been discussed. The following exchange occurred on the record,

BY MS. BIBLE:

Q. I want to get to the part where you're working as a confidential informant/nark for another agency.

A. Yes, ma'am.

Q. Kind of glossed over that.

What agency were you working as for a confidential informant.

A. For Chaz Willett mostly and the New Philly Police Department, and then I only worked once for the Carrollton Police, and he had given me a bunch of names that he wanted me to find. I can't remember his name at the moment though.

Q. Okay. So this is one of the reasons you let Jared Lipford come over to your house is because he was on your list of people?

A. Yes. So he would trust me and I could make buys from him because I didn't know him at all really. I had met him in high school but we never really - -

Q. So your purpose of letting Jared Lipford in was part of your work as a confidential informant for a law enforcement agency?

A. To get him to trust me, yes.

MS. BIBLE: Your Honor, I ask to approach.

THE COURT: You may.

-------------------------------------

(A conference was held at the bench outside the hearing of the jury.)

MS. BIBLE: Your Honor, at this time I move for a mistrial. This information was never disclosed to me. He was clearly a confidential - - this is clearly exculpatory. He is working as a CI for another law enforcement agency. This should have been disclosed. It's the first time I am hearing of it, and I'm entitled to so much more of what he was getting what the deal was, whether he's being paid - -

THE COURT: As a CI you mean but not in this case?

MS. BIBLE: That's why.

THE COURT: I heard that because that's how I - - that's why he invited him over to his house is because he was the one on a list of people that he was supposed to check out as a CI.

MS. SCHNELLINGER: I wasn't aware of that until today. I knew that they believed he had been a snitch but I was never told that until today. I wasn't - -

MS. BIBLE: I move for a mistrial. This information should never have been - - he's clearly - - his motive for getting that, that completely changes the whole case of him bringing over. It's not just oh, I let this girl I know, I let this guy come over, started using meth. He's working as a CI. That changes the whole motive.

THE COURT: Certainly surprise evidence is what I am hearing. I understand that but is it a violation of the discovery rules? I don't believe so because it's not known to the parties that can be present here. I think

he's bringing it up on his own. There is no surprise evidence but I'm not sure.

MS. BIBLE: Still think at this time it's grounds for a mistrial. Whether it's the State, you know, knows or not, it's grounds for a mistrial. It completely changes his motive. His motive to lie - - I'm sorry. His motive to lie is essential to this case to the Defense.

THE COURT: It is in and that evidence has been brought to the jury's attention.

MS. BIBLE: But I don't know the details of this; who was working with him, if he's getting paid. I have the right to know that. I have a right to file for information on a confidential informant.

THE COURT: I think if you have outside the jury's presence inquiry of this witness before you complete your cross-examination.

MS. SCHNELLINGER: Is it possible we can talk in chambers before we did that out of the Jury's hearing?

* * *

THE COURT: For the record, counsel and the judges have had a meeting in camera. There's been some evidence that was brought forward by this witness with respect to questions and whether those answers were known, whether it was exculpatory evidence that should have been discovered and brought forward in discovery and some things about the background.

So the Court has determined that the Defense Counsel will continue to question the witness outside the presence of the Jury; in essence, to further discovery because of the surprise testimony to determine what else is known, what else is held. Then we will return to cross-examination before the Jury pending any further motions by either side.

And let the record reflect that Mr. Pallaye's counsel is present for this questioning.

MS. BIBLE: Thank you, Your Honor.

Tr. 233-237; 238-239.

{¶24} The trial court allowed witness testimony concerning Mr. Pallaye's involvement as a C.I. with various law enforcements agencies. Following the witness testimony, Appellant's counsel stated on the record,

THE COURT: Okay. Would you like to put a formal motion and arguments on the record?

MS. BIBLE: Just briefly, Your Honor.

I appreciate the Court allowing Defense Counsel, us to inquire of these witnesses outside the hearing of the Jury. It's a little bit unusual situation that came up from this witness.

Yesterday I had made a motion for mistrial based on what the Jury hears, to whatever effect that Mr. Lipford is on the radar of some other police agencies as a meth user or a cooker.

After listening to this, obviously the information that is given is that this was not known to either of the officers involved in this case, which means that the Prosecutor was not aware of it.

I have discussed this with my client. I went down this morning downstairs to the visitation rooms and talked to him. We talked again this morning. I advised him we can go forward with the motion for a mistrial. If that wouldn't be granted, I could ask for limiting instructions or motions to strike, and then if that would be granted, then basically it's off limits, or I have explained to him that I can deal with this in cross-examination of Mr. Pallaye and of the police officers.

Mr. Lipford is actually a very intelligent client; has listened to my advice and has agreed that we withdraw our motion for a mistrial and proceed on. I will just - - as a strategy I will just deal with this in cross-examination.

And Jared, I just want you to confirm for the record that I have gone over your legal options regarding requesting a mistrial or proceeding on cross-examination; is that correct?

THE DEFENDANT: Correct.

THE COURT: And it is your request that I handle this in my cross-examination of Mr. Pallaye?

THE DEFENDANT: Yes.

THE COURT: And you're okay with me withdrawing my motion for mistrial?

THE DEFENDANT: Yes.

THE COURT: Okay. Mr. Lipford, you understand what that means?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You don't know how the mistrial will be treated. I could grant it or deny it and then you move on with the case, but at this point you don't want a ruling from me?

MS. BIBLE: We do not, Your Honor.

THE COURT: So the Court will not make a motion or finding the mistrial. At this point then it appears we have done some additional discovery that the Court has permitted in order to inquire as to whether any facts as to whether it's exculpatory or surprise evidence, and at this point there is not further motion pending; the Court orders then we proceed with bringing the Jury back in and proceed with the trial.

We left off with cross-examination of the witness, Matthew Pallaye, and continue at that point. Is there anything further before we bring the Jury in?

MS. SCHNELLINGER: No, Your Honor.

MS. BIBLE: No.

THE COURT: Okay. We will call the Jury and Mr. Pallaye.

Tr. At 286-289.

**{¶25}** Based upon the foregoing, we find Appellant has waived the objection to the testimony concerning information gained as a result of Mr. Pallaye's involvement as a confidential informant.

**{¶26}** Furthermore, assuming arguendo if evidence of Appellant's heroin use and purchase thereof were erroneously admitted at the trial herein, we find the admission was harmless error. There was overwhelming evidence introduced at trial sufficient to find Appellant guilty of the charge herein.

**{¶27}** The first assignment of error is overruled.

II.

**{¶28}** In the second assignment of error, Appellant asserts the trial court erred by failing to give the jury a limiting instruction relative to other acts evidence presented to the jury.

**{¶29}** Pursuant to our analysis and disposition of Appellant's first assignment of error, we find the trial court did not err in instructing the jury. A limiting instructing relative to other acts evidence was not warranted herein. Further, Appellant did not request a limiting instruction, and the trial court was under no obligation to provide an instruction, sua sponte.

**{¶30}** The second assignment of error is overruled.

III.

**{¶31}** The third assignment of error challenges the trial court's admission of alleged improper testimony by several witnesses, including alleged hearsay statements.

**{¶32}** Evidence Rule 801 states,

(C) Hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

(D) Statements which are not hearsay. A statement is not hearsay if:

\*\*\*

(2) Admission by party-opponent. The statement is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity, or (b) a statement of which the party has manifested an adoption or belief in its truth, or (c) a statement by a person authorized by the party to make a statement concerning the subject, or (d) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (e) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy.

Evid. R. Rule 801

**{¶33}** Appellant specifically objects to the testimony of his co-defendants Ashley Stegeman and Matthew Pallaye, which he asserts is hearsay and based upon no personal information.

**{¶34}** At trial, Ashley Stegeman testified,

Q. Did you ever hear the Defendant specifically the Defendant talk about methamphetamine or meth or making meth?

A. Yes.

Q. When was that and what was that?

A. I knew that before he moved into our house that he had cooked prior to that, and that - -

Q. How did you know that? Let me stop you.

A. He told us that.

Q. What did he say?

A. He just said that they used to cook, and he was known for his quality of meth.

Q. And he told you this?

A. Yes.

Q. What else did you learn from the Defendant?

A. I don't know. I just - - there is just - - I don't know. It's so confusing to me now.

Q. Did you ever see him specifically using meth, the Defendant?

A. I saw him using something but I didn't know for sure what it was to look at it.

Tr. at 129.

{¶35} She further testified,

A. What I was told was Jared was upstairs in the attic cooking and every once in awhile Alex would go upstairs and cook as well. I don't know if she would actually cook or if she was just upstairs while he was cooking, but I know that they were both up there.

Q. Did you learn where exactly this was taking place?

A. They told me it was going on upstairs in the attic - -

MS. BIBLE: Objection.

THE COURT: What's your objection as to?

MS. BIBLE: Hearsay.

THE COURT: I would overrule.

Tr. at 133-134.

{¶36} Matthew Pallaye testified at trial,

Q. Where did the meth come from?

A. That's from Jared making it in the upstairs or in the attic, one of the two.

Q. How do you know this?

A. Well, that's when it all kind of came to light that he was making it because didn't go anywhere to get it. They didn't have any money to get it. So I kind of you know, figured it out and was like hey, what's going on, and I mean it wasn't that hard to figure out.

Q. And did you ask the Defendant what was going on?

A. Yeah.

Q. And what did he tell you?

A. He was making meth.

Q. And once he told you that he was making it, what did you do?

A. I was scared shitless, pardon my language, because it was in my house and I know obviously I was going to be charged with anything that was going on in the house, and I wanted him to leave but at the time I wanted the drugs.

Tr. at 203-204

{¶37} Stegeman and Pallaye both testified as to Appellant's statements made to them, which were statements made by Appellant against his own interests. Further, both had personal knowledge as to the activities in the house, and the events taking place.

{¶38} Accordingly, we find the trial court did not err in allowing their testimony. The third assignment of error is overruled.

IV.

{¶39} In the fourth assignment of error, Appellant maintains his conviction is against the manifest weight and sufficiency of the evidence.

{¶40} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins,* 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held,

> An appellate court's function when reviewing the sufficiency of the
> evidence to support a criminal conviction is to examine the evidence
> admitted at trial to determine whether such evidence, if believed, would
> convince the average mind of the defendant's guilt beyond a reasonable
> doubt. The relevant inquiry is whether, after viewing the evidence in a light
> most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime proven beyond a reasonable doubt.

**{¶41}** In determining whether a conviction is against the manifest weight of evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins,* supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶42}** Appellant was found guilty of one count of illegal assembly or possession of chemicals for the manufacture of drugs or aiding abetting illegal assembly or possession of chemicals for the manufacture of drugs, pursuant to R.C. 2925.041(A).

**{¶43}** Both Ashley Stegeman and Matthew Pallaye testified Appellant brought a blue Rubbermaid tote with him when moving into the attic of the residence. Responding officers found a blue tote in the attic, along with materials necessary to operate a methamphetamine lab. Appellant cooked methamphetamine in the past, and his codefendants testified he was upstairs in the residence involved in the operation of a meth lab, and had told them he was engaged in the cooking of methamphetamine. Accordingly, we find Appellant's conviction is not against the manifest weight nor based upon insufficient evidence

V.

{¶44} In the fifth assignment of error, Appellant maintains he was denied the effective assistance of trial counsel.

{¶45} A properly licensed attorney is presumed competent. *State v. Hamblin,* 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process the trial cannot be relied upon as having produced a just result. *Id.*

{¶46} Appellant argues his trial counsel was ineffective in failing to object to hearsay testimony, and witness testimony not based on personal knowledge. Further, Appellant argues counsel failed to object to other acts evidence, and failing to request a limiting instruction. As discussed in our analysis and disposition of the first, second and third assignment of error, we find some of the evidence was properly admitted and other amounted to harmless error. We do not find the outcome of the trial would have been otherwise but for those alleged errors.

{¶47} Upon review of the record, Appellant has not demonstrated but for any presumed error of counsel, the outcome of the trial would have been otherwise. Accordingly, the fifth assignment of error is overruled.

VI.

{¶48} Appellant's final assignment of error asserts the trial court's cumulative error prevented Appellant from receiving a fair trial.

{¶49} Pursuant to our analysis and disposition of Appellant's first, second, third, fourth, and fifth assignments of error, Appellant's sixth assignment of error is overruled.

{¶50} The judgment of the Stark County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Gwin, J.  and

Delaney, J. concur